## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MOURAD MADRANE, | : | |
| Petitioner | : | Civil Action No. 1:05-CV-2228 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| THOMAS HOGAN, et al., | : | |
| Respondents | : | |

### AMENDED MEMORANDUM

Before the Court is Petitioner Mourad Madrane's Petition for Writ of Habeas Corpus.  (Doc. No. 1.)  The petition has been briefed and is ripe for disposition.  For the reasons discussed below, the Court finds it necessary to schedule a hearing on the petition.[1]

## I.      BACKGROUND

Petitioner commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 by filing a petition on October 31, 2005.  Petitioner explained the basis for his petition as follows:

> Narrowly framed, this habeas corpus proceeding under 28 U.S.C. § 2241 concerns the constitutionality of the prolonged detention of Petitioner while he awaits a decision from a United States Court of Appeals on his petition for review of a final order of removal.  Respondent violated Petitioner's constitutional right to a meaningful individualized determination of his status pending adjudication of the validity of the removal order, as contemplated by 8 C.F.R. § 241.4(i).  Petitioner alleges that his incarceration by respondent while he contests his removal order is unreasonable and (1)

___

[1]  In its original memorandum and order (Doc. No. 35), the Court inadvertently and incorrectly indicated that the petition was to be denied.  In fact, the memorandum and order did not fully adjudicate the petition, and instead the Court concluded that it is necessary to hold a hearing to consider Petitioner's assertion that his extended detention has been unconstitutional.  Other than to provide this correction, this amended memorandum is in all other respects identical to the memorandum that was issued on February 1, 2007 (id.).

> violates his substantial and procedural right to due process; and (2) violates his right under the Equal protection clause where similarly situated aliens, have been treated differently.

(Id. at 1.)[2]  At the time his petition was filed, Petitioner represented that he had been held in custody for nearly two years at various detention centers.  Petitioner has underscored that by the petition he was "exclusively challenging his continued detention by [Respondents], not the merits of his removal order." (Id. at n.1.)

On November 8, 2005, the Court entered an order directing that the petition be served upon Respondents and directing Respondents to show cause why the Petition should not be granted.  (Doc. No. 3.)  On November 15, 2005, Petitioner filed an anticipatory motion to prevent Respondents from obtaining an enlargement of time to respond to the show cause order, notwithstanding the fact that no such motion was pending.  (Doc. No. 5.)  Thereafter, Petitioner filed a second anticipatory motion, this time seeking an extension of time to respond to Respondent's brief.  (Doc. No. 7.)  On November 28, 2005, Respondents requested an extension of time to respond to the show cause order on the grounds that counsel had a family emergency that required attention.  (Doc. No. 8.)  The Court granted Respondents' motion and directed that a response be filed within twenty days.  (Doc. No. 9.)

On December 19, 2005, Respondents filed a response in which they argued that the petition should be denied.  Specifically Respondents argued that Madrane was being held as a pre-final order detainee under § 236(c) of the Immigration and Nationality Act as an alien convicted of an aggravated

---

[2]  Contrary to Petitioner's representations, it appears that Petitioner does not have a final order of removal, and as will be discussed below, Petitioner has had several hearings scheduled before an Immigration Judge to consider the merits of his challenge to his removal.  At least three such hearings have been continued at Petitioner's request since April 2006.

felony pursuant to § 237(a)(2)(A)(iii), having been convicted of a crime involving moral turpitude committed within five years after admission for which a sentence of one year or longer may be imposed. Accordingly, Respondents asserted that Petitioner is subject to pre-final order detention pursuant to § 236(c)(1)(B) of the INA, 8 U.S.C. § 1226(c)(1)(B).[3]  Respondents note that the crimes for which Madrane was convicted – namely, conspiring to fraudulently obtain credit card numbers and using a credit card skimmer to purchase goods and merchandise totaling more than $180,000 – are covered in §§ 237(a)(2)(A)(iii) and (B) of the INA, and that Madrane's crimes involved moral turpitude that did not arise out of a single scheme of conduct, thus making him removable under § 237(a)(2)(A)(ii) of the INA.  Finally, Respondents contend that in <u>Demore v. Hyung Joon Kim</u>, 538 U.S. 510 (2003), the United States Supreme Court held that mandatory pre-final order detention under § 236(c) of the INA does not violate any protections guaranteed to aliens under the United States Constitution.  For all of the foregoing reasons, Respondents argued that Petitioner's habeas petition must be denied.

On February 21, 2006, Petitioner sought leave to file an amended memorandum of law in support of the Petition, which was granted.  (Doc. No. 14.)  In support thereof, Petitioner claimed a

---

[3]  Section 236(c)(1) of the INA provides as follows:

    (c)      Detention of Criminal Aliens. –
    (1) Custody. – The Attorney General shall take into custody any alien who –
        (A) is inadmissible by reason of having committed any offense covered in section 212(a)(2),
        (B) is deportable by reason of having committed any offense covered in section 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D).

8 U.S.C. § 1226(c).

supplemental memorandum was warranted due to "recent findings and facts not available to Petitioner at the time of his December 28, 2005 reply to the government's opposition." (Id.)  Respondent responded to this supplemental memorandum on March 31, 2006, reasserting its arguments.  On April 12, 2006, Petitioner replied to that response.  (Doc. No. 21.)  In a letter received on May 18, 2006, Petitioner noted that he was scheduled to have a merits hearing on June 21, 2006.  (Doc. No. 22.)  On June 29, 2006, the Court ordered Respondents to file a status report regarding the outcome of that hearing.  (Doc. No. 23.)  On July 6, 2006, Respondents submitted a status report indicating that the June 21, 2006 hearing had been rescheduled to July 27, 2006, upon a motion for continuance filed by Petitioner's counsel.  Respondents appended copies of three motions by which Petitioner moved to continue his merits hearings, delaying the hearing from April 12, 2006 to May 17, 2006; from May 17, 2006 to June 21, 2006; and from June 21, 2006 to July 27, 2006, all granted upon Petitioner's request.

On October 25, 2006, the Court directed Respondents to submit another status report to advise regarding the posture of Petitioner's ongoing challenge to his removal and regarding his continued custody.  (Doc. No. 30.)  On October 30, 2006, Respondents filed a status report that on September 13, 2006, an Immigration Judge granted Petitioner an adjustment of status pursuant to Section 245 of the INA and a waiver of inadmissibility under Section 212(h) of the INA.  The Bureau of Immigration and Customs Enforcement have appealed the IJ's decision to the Board of Immigration Appeals.  Respondents provide no indication as to when the BIA is anticipated to render a decision on ICE's appeal.  Respondents have asserted that because Petitioner remains a pre-final order detainee, he remains ineligible for release as his continued custody is mandated by statute.

On January 3, 2007, Petitioner wrote a letter to the Court, imploring that his petition be granted and expressing confusion and anger that he has been incarcerated for nearly three years while he pursues various challenges to Respondents' efforts to have him removed from the United States. Petitioner has represented that his extended incarceration has placed considerable strain on him and his family.

II.    **DISCUSSION**

The Respondents' response to Petitioner's request that he be released from custody pending resolution of his removal proceedings is straightforward.  First, Respondents underscore that Petitioner's detention during his pre-final order removal proceedings is not discretionary, but is instead mandated by federal statute.  Secondly, Respondents rely on the Supreme Court's decision in Demore, where a narrow majority of the Supreme Court held that, at least in typical cases, section 236(c) of the INA does not violate due process.

The Court recognizes the unqualified mandate that § 236(c) of the INA imposes upon the Attorney General.  The Court further recognizes that in Demore, a bare majority of the Supreme Court upheld the constitutionality of § 236(c), at least against the facts that the case presented.  Nevertheless, a careful reading of the Supreme Court's decision reveals it to be not the sweeping pronouncement suggested by Respondents, but rather a narrower holding grounded in repeated reference to the anticipated brevity that pre-final order removal proceedings are expected to take in the ordinary course.  The emphasis in Demore on the anticipated limited duration of the detention period is unmistakable, and the Court explicitly anchored its holding by noting a "brief period," id. at 513, 523, of "temporary confinement."  Id. at 531.  Indeed, the references to the brevity and limited nature of

5

confinement can be found throughout <u>Demore</u>.  <u>See id.</u> at 513 ("Congress . . . may require that

[criminal aliens] be detained for the <u>brief period</u> necessary for their removal proceedings."); <u>id.</u> at 523

("Respondent argued that the Government may not . . . detain him for the <u>brief period</u> necessary for his

removal proceedings."); <u>id.</u> at 526 (noting the "Court's longstanding view that the Government may . . .

detain deportable aliens during the <u>limited period</u> necessary for their removal proceedings"); <u>id.</u> at 529

n.12 (noting "the <u>very limited time</u> of the detention at stake") (emphasis added).  Moreover, in

upholding the constitutionality of § 236(c), the Supreme Court specifically referenced statistics that

demonstrated the typically brief period that pre-final order removal proceedings require and the

attendant short periods of detention that are therefore typically imposed.  Relying on statistics compiled

by the Executive Office for Immigration Review, the Supreme Court noted that in 85% of cases in

which aliens were detained pursuant to § 236(c), removal proceedings were completed within an

average of 47 days, with a median of 30 days.  <u>Id.</u> at 529.  Furthermore, the Court noted that even in

the remaining 15% of cases, in which an alien appeals an Immigration Judge's ruling to the Board of

Immigration Appeals, an appeal takes an average of four months, with an even shorter median time.  <u>Id.</u>

As the United States Court of Appeals for the Ninth Circuit recently commented, "[t]here is no

indication anywhere in <u>Demore</u> that the Court would countenance an indefinite detention."  <u>Nadarajah</u>

<u>v. Gonzales</u>, 443 F.3d 1069, 1081 (9th Cir. 2006).[4]

---

[4]  As noted, nothing in <u>Demore</u> declares that multi-year detention under § 236(c) would necessarily be constitutional, and Justice Kennedy identified this potential problem as presenting an open question.  <u>See</u> <u>Demore</u>, 538 U.S. at 532 (Kennedy, J., concurring) (alien "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified").

Accordingly, numerous courts that have confronted pre-final order detainees' challenges to their extended confinement have endeavored to apply the general rule announced in <u>Demore</u> to the specific facts of the habeas petitions presented to them where pre-final order detainees have been held in custody for one or more years while their removal proceedings wound their way through the administrative and appellate processes.  Several courts have found that due process required that aliens subjected to lengthy mandatory detention be given bail hearings or otherwise have ordered their release in lieu of a bail hearing.  For example, in <u>Ly v. Hansen</u>, 351 F.3d 263 (6th Cir. 2003), the Sixth Circuit found that following <u>Demore</u> the proper interpretation of § 236(c) was to "[construe] the pre-removal detention statute to include an implicit requirement that removal proceedings be concluded within a reasonable time, [thereby avoiding] the need to mandate the procedural protections that would be required to detain deportable aliens indefinitely."  <u>Id.</u> at 270.  On this standard, the Sixth Circuit "affirm[ed] the grant of habeas corpus and the district court's finding that the incarceration of 18 months pending removal proceedings is unreasonable, [without requiring] the United States to hold bond hearings for every criminal alien detained under § 236."  <u>Id.</u>  Although the Sixth Circuit declined to create a rigid guideline of what would constitute a reasonable or unreasonable length of pre-final order detention, the court emphasized that habeas relief should be available for aliens whose particular removal proceedings were taking an unusually long time to complete:  "The INS may detain prima facie removable aliens for a time reasonably required to complete removal proceedings in a timely manner.  If the process takes an unreasonably long time, the detainee may seek relief in habeas proceedings."  <u>Id.</u> at 268.

Subsequent to <u>Ly</u>, courts within and without the Sixth Circuit have found habeas relief to be

warranted in cases where aliens have been subject to prolonged pre-final order detention under §

236(c).  See, e.g., Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir. 2005) (finding that the authority

conferred by 8 U.S.C. § 1226(c) "as applying to expedited removal of criminal aliens" and finding that

alien's two-year and four month detention to be "not expeditious;" recognizing that further

administrative and judicial review would take more than a year to complete; and ordering petitioner's

release unless within 60 days the government provided petitioner with a bail hearing before an IJ with

the authority to order his release unless the government established that petitioner was a flight risk or a

danger to the community); Diomande v. Wrona, No. 05-73290, 2005 U.S. Dist. LEXIS 33795, *4-7

(E.D. Mich. Dec. 12, 2005) (granting habeas relief and ordering alien released on $10,000 bond where

he had been detained in pre-final order proceedings for nearly two years, where petitioner had recently

been granted withholding of removal by an Immigration Judge that was under appeal at the BIA, where

the court found it "more than possible, indeed certain, that this case will proceed through the circuitry of

administrative and judicial appeals for several additional months, and most likely, several years;" where

petitioner had a fiancé and daughter in close proximity; and where the government had presented no

evidence that petitioner posed a danger to the community or a risk of flight); Fuller v. Gonzales, No.

3:04-CV-2039, 2005 U.S. Dist. LEXIS 5828, *14-17 (D. Conn. April 8, 2005) (where alien had

been detained for more than two years under § 236(c), granting habeas petition and ordering

government to hold a prompt bond hearing); see also Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir.

2006) (in an action where the government sought to hold an alien in detention pursuant to the general

immigration detention statute set forth at 8 U.S.C. § 1225(b)(1)(B)(ii) and (b)(2)(A), finding that

government was not empowered to detain aliens indefinitely and concluding that alien's five-year

detention had been unreasonable; ordering petitioner's immediate release subject to conditions to be set by a delegate of the Attorney General); <u>Parlak v. Baker</u>, 374 F. Supp. 2d 551, 561 (E.D. Mich. 2005) (ordering pre-final order detainee released immediately for reasons other than the length of his eight-month detention, but finding it appropriate to note "[g]iven the legal intricacies surrounding Petitioner's removal, it will very likely take years for a final determination of Petitioner's status.  It is certain that the removal proceedings will be protracted as this case winds through the appellate process.  In determining whether Petitioner's detention is unreasonable, the Court cannot ignore the likely future course of the case which shows a real certainty that Petitioner is facing a significant period of detention for an indeterminate period of time.  This amounts to a violation of due process under the circumstances.").

Turning to the facts of the instant petition, Mourad Madrane has now been held in prison as a pre-final order detainee for almost three years while he challenges the efforts of the United States to have him removed to Morocco.  This length of detention is approximately 23 times the average length of detention that the Supreme Court found was required to finalize removal proceedings in 85% of cases.  In contrast to the four months of detention the Supreme Court noted was the average in the remaining 15% of removal cases, Madrane has been detained almost nine times this length of time.  The Court is mindful that Madrane has, to some degree, contributed to the length of time it has taken to adjudicate his challenges to Respondents' attempts to have him removed.  While the instant decision was pending, Petitioner's scheduled merits hearing was continued on three separate occasions, each time at Petitioner's request.  (Doc. No. 25, Respondents' Ex. C.)  Nevertheless, these delays, which appear to have extended the process for approximately six months, make up only a fraction of the

amount of time Petitioner has been held in custody during his removal proceedings, and the fact that

Petitioner obtained three continuances and achieved some recent success before an IJ in having his

status adjusted do not somehow vitiate the Court's concern over what appears to be an extraordinarily

lengthy deprivation of liberty.  The Court's concern regarding this length of detention is made even

more acute by the fact that Respondents have now appealed to the BIA certain rulings of an IJ that

adjusted Petitioner's status to a permanent resident alien and granted him a waiver of inadmissibility,

and the administrative and appellate process that has yet to be exhausted may be considerably time-

consuming.  In light of these facts and the forecast of additional future appeals or proceedings that could

result in Petitioner being detained for many months in addition to the nearly three years he has already

been held in custody, the Court cannot adopt Respondent's inflexible position that Petitioner may be

detained for as many years as it may take to obtain a final order regarding his removal simply on the

basis of the mandatory language of § 236(c), particularly where the Supreme Court in Demore did not

expressly contemplate the constitutionality of such protracted detention, and where Defendants have

offered no other compelling justification or authority for such indefinite detention of this particular alien.

Accordingly, the Court has determined that it is appropriate and necessary to hold a hearing on

Petitioner's petition for habeas relief.  Although the Court cannot guarantee that volunteer counsel can

be obtained for Petitioner, should Petitioner make a request for appointment of counsel within seven

days of the date of this order, the Court is prepared to seek appointment counsel to represent Petitioner

in connection with such hearing.  At the time of the hearing, Respondents shall be prepared to provide

justification for Petitioner's continued detention, including, without limitation, evidence to demonstrate

his potential risk of flight and potential danger to the community in the event he is ordered released.

10

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**MOURAD MADRANE,**               :
    **Petitioner**                :     **Civil Action No. 1:05-CV-2228**
                              :
**v.**                            :     **(Chief Judge Kane)**
                              :
**THOMAS HOGAN, <u>et al.</u>,**    :
    **Respondents**               :

### <u>AMENDED ORDER</u>

**AND NOW**, this 5th day of February 2007, **IT IS HEREBY ORDERED THAT**

the Court will convene a hearing on Petitioner's petition for habeas corpus on Tuesday, February 28,

2007, at 1:30 p.m.  The hearing shall be held in Courtroom Number 4, United States Federal Building,

228 Walnut Street, Harrisburg, Pennsylvania.

**IT IS FURTHER ORDERED THAT** if Petitioner wishes the Court to seek appointment

counsel to represent him in connection with this petition and the February 28, 2007, hearing, he shall

notify the Court's courtroom deputy, Shawna Cihak, not later than Thursday, February 8, 2007.

Plaintiff may notify Ms. Cihak via telephone (717-221-3922) or in writing.


                                     S/ Yvette Kane
                                     Yvette Kane, Chief Judge
                                     United States District Court
                                     Middle District of Pennsylvania